IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 SEP 19 PM 3:25
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

CROSSROADS SYSTEMS, INC.,
      Plaintiff,

-vs-

Case No. A-13-CA-800-SS

DOT HILL SYSTEMS CORP.,
      Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Dot Hill System Corp. (Dot Hill)'s Motion for Partial Summary Judgment [#50], Plaintiff Crossroads Systems, Inc. (Crossroads)'s Response [#70], Plaintiff Crossroads' Cross Motion for Partial Summary Judgment [#67], Dot Hill's Response [#77], Dot Hill's Combined Reply [#79], and Plaintiff Crossroads' Sur-Reply [#85]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

In October 2006, Dot Hill and Crossroads entered into an "Amended Settlement and License Agreement" (the Dot Hill License). Pl.'s Resp. [#70-1], Ex. A (Dot Hill License). This agreement was a royalty-bearing license covering "any product manufactured by or for Dot Hill, based on designs or specifications created by Dot Hill, and which is Sold by Dot Hill, that is covered by any claim of any patent in the '972 Patent Family." *Id.*, § 1.5. The '972 Patent Family includes U.S. Patent No. 6,425,035 (the '035 patent). *Id.*, § 1.1. Dot Hill has made products for Hewlett-Packard (HP) since the fourth quarter

of 2007. Declaration of Sandy Kaiser [#44], ¶ 3. For a time, Dot Hill paid royalties to Crossroads pursuant to the Dot Hill License on various products sold to HP. Pl.'s Resp. [#70-2], Ex. B (Jonikas Depo.), at 16:11–25, 18:17–21:18, 23:15–27:15.

In October 2011, Crossroads entered into a separate "Confidential Settlement and License Agreement" with HP (the HP License). *Id.* [#70-5], Ex. E (HP License). In this agreement, Crossroads granted HP a license to "make, have made, use, sell, offer to sell, have sold, lease, import, have imported, export and otherwise transfer" HP Licensed Products. *Id.*, § 2.1. "HP Licensed Products" are defined as "any past, current or future product . . . manufactured by or for HP based on designs or specifications created by or for HP, and which is sold/distributed by or for HP, that is covered by any claim of the Crossroads Patents." *Id.*, § 1.14. Additionally, the license "extend[s] to HP customers, distributors and manufacturers, involved in the distribution, manufacture, sale or use of HP Licensed Products." *Id.*, § 2.1. In exchange, HP made a lump sum payment to Crossroads; the agreement is royalty-free. *Id.*, § 4.1.

At some point, Dot Hill ceased making royalty payments to Crossroads on products it made for HP, which Crossroads believes it is owed. For this reason and others, Crossroads sued Dot Hill, accusing Dot Hill of: (1) breaching the Dot Hill License by failing to make royalty payments on products covered by the license, and (2) infringing the '035 patent by making certain products for HP. *See* Compl. [#1], ¶ 27; *Id.*, ¶¶ 31–34.[1] Dot Hill answered and, as relevant to the instant motions, asserted defenses of license

---

[1] According to Crossroads, the '035 patent infringement claims are based on not only the products Dot Hill sells to HP, but also all products Dot Hill manufactures, uses, offers for sale, sells, or imports into the United States which infringe a claim of the '035 patent. While the Court is unclear which products exactly fall into the former and latter categories, Crossroads does list the following as members of the former: AJ752A: HP 2012sa Single Controller Modular Smart Array; AJ753A: HP 2012sa G2 Dual Controller Modular Smart Array; AJ805A: HP 2312a G2 Dual Controller Modular Smart Array (LFF); and AJ807A: HP 2324sa G2 Dual Controller Modular Smart Array (SFF). *See* Pl.'s Resp. [#70], ¶ 3. Therefore, as the Court understands the pleadings, Dot Hill's instant motion for partial summary judgment concerning patent infringement relates only to those products made for HP.

and waiver. Answer [#25], ¶¶ 43–46. In short, Dot Hill contends the HP License, which gives HP "have made" rights, makes Dot Hill a third party beneficiary, meaning Dot Hill is protected from Crossroads' claims concerning products made by Dot Hill for HP by the doctrine of license. Relatedly, Dot Hill argues Crossroads, by entering into the HP License, waived its right to enforce the Dot Hill License.

Dot Hill has now filed a motion for partial summary judgment on Crossroads' claims for patent infringement and breach of contract concerning products Dot Hill made exclusively for and sold exclusively to HP. In Dot Hill's view, it is a third party beneficiary of the HP License and therefore is not subject to an infringement claim. Furthermore, Dot Hill argues the HP License is fully paid-up and does not require any additional royalty payments by Dot Hill under the Dot Hill License.

Crossroads disputes Dot Hill's understanding of the impact of the HP License on the Dot Hill License. In Crossroads' view, the two licenses are independent, and Dot Hill owes royalties under the Dot Hill License separate and apart from whatever the obligations of the HP License may be. In addition, since Crossroads believes Dot Hill is in breach of the Dot Hill License, it believes it can now sue Dot Hill for patent infringement concerning those certain products Dot Hill makes for HP. Crossroads has cross moved for summary judgment on the defenses of license and waiver.

## Analysis

### I.   Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute

regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to

make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

The parties' dispute is a matter of contract interpretation, and the HP License is governed by Texas law. HP License, ¶ 8.4. When interpreting a contract the Court's primary objective is to "ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). In doing this, the Court should review the entire contract and "harmonize and give effect to all of its provisions so that none will be rendered meaningless." *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377–78 (5th Cir. 2013). Further, contracts should be interpreted to avoid absurd results. *Provost v. Unger*, 949 F.2d 161, 165 (5th Cir. 1991); *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) ("When possible, we will avoid a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.") (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

A breach of contract is a matter of law appropriate for summary judgment where the contract's terms are clear, and the contract is not ambiguous. *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 120 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999)). "A contract is not ambiguous if it is worded so that it can be given a definite or certain legal meaning." *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F. Supp. 2d 556, 559 (E.D. Tex. 2008) (interpreting contract under Texas law). Where a contract is clear on its face, parol evidence is generally inadmissible to "vary, add to or contradict" its terms. *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 709 (Tex. 2007).

Under Texas law, courts will find a third-party beneficiary to a contract where the contract reflects "a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party." *Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 552 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "[T]he intention of the contracting parties is controlling." *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011).

Dot Hill contends the HP License is unambiguous and reflects HP's intent to have third parties, including Dot Hill, manufacture licensed products for HP. Specifically, Dot Hill points to the "have made" rights granted to HP under the HP License. *See, e.g., LaserDynamics, Inc. v. Quanta Computer Inc.*, 694 F.3d 51, 72–73 (Fed. Cir. 2012) (recognizing "have made" rights); *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1387 (Fed. Cir. 1996) (same). Since the HP products manufactured by Dot Hill are covered by the HP License, Dot Hill contends: (1) it does not owe royalties under the Dot Hill License because Crossroads has already been paid royalties by HP, and (2) it does not infringe the '035 patent because the HP License extends to manufacturers of HP products.

Crossroads argues the HP License has no impact on the Dot Hill License and bases this position on § 8.7.1 of the HP License. Section 8.7 is essentially a standard merger clause, stating "[t]his Agreement contains the entire understanding and agreement of the Parties . . . ." HP License, § 8.7. Section 8.7.1, titled "Limitations," provides in its entirety:

> **8.7.1 Limitations.** The Parties acknowledge that there may be one or more other agreements between Crossroads, HP, and/or 3PAR related to subjects other than the Lawsuit and the releases and Licenses granted in this Agreement. This Agreement is not intended to and does not affect the terms of any such other agreement, including any patent indemnification obligations that Crossroads may owe HP in the event of any third-party patent claim or indemnity demand. This Agreement is also not intended to and does not affect the terms of the Confidentiality Agreement dated February 12, 2011 between

>Crossroads and 3PAR. *This Agreement is not intended to and does not affect or otherwise alter the terms of any agreement between a Party and a third Party.*

*Id.*, § 8.7.1 (emphasis added). Crossroads contends this last sentence unambiguously demonstrates the HP License does not affect the Dot Hill License.

As an initial matter, the Court concludes the HP License is unambiguous. Specifically, the Court agrees with Dot Hill that the HP License unambiguously grants "have made" rights to HP, and Dot Hill's manufacturing of products for HP falls within those "have made" rights. Additionally, the Court agrees with Crossroads that the HP License "is not intended to and does not affect or otherwise alter the terms of" the Dot Hill License. The question then becomes how these two conclusions impact Crossroads' patent infringement and breach of contract claims.

As for patent infringement, the Court agrees with Dot Hill. The HP License extends its license to manufacturers like Dot Hill, and a license is a valid defense to patent infringement. *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003). In fact, Crossroads' patent infringement claims are premised on the notion Dot Hill is in breach of the Dot Hill License by not paying royalties. Even assuming Dot Hill is in breach of the Dot Hill License by not paying the royalties (and thereby eliminating a license defense as it pertains to the Dot Hill License), Dot Hill is still protected by the HP License from any patent infringement claim. Therefore, the Court concludes Dot Hill is entitled to judgment concerning any patent infringement claims for products made for HP, which infringe the '035 patent.

As for breach of contract, the Court fails to see why the HP License somehow eliminates Dot Hill's preexisting separate obligation under a separate license to pay a separate royalty to Crossroads, and Dot Hill never offers the Court an adequate reason why it should so conclude. First, Dot Hill points the Court


to the "double recovery rule," which provides a party may only gain one recovery for a single wrong. *See* Def.'s Mot. Partial Summ. J. [#50], at 6–7. Typically, the double recovery rule is applicable only where the patent holder has been fully compensated for infringement by another party. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1303 (Fed. Cir. 2007) (stating "a patentee may not sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damages fully compensate the patentee for infringement by users"). This case, however, does not implicate the double recovery rule as Crossroads is attempting to collect two separate royalties, arising from distinct licenses with different parties. Dot Hill cites no authority suggesting Crossroads is prohibited from recovering two royalties based on the double recovery rule.[2]

Second, Dot Hill cites *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008) to argue the authorized sale of a patented product exhausts the patent rights in that product. Def.'s Mot. Partial Summ. J. [#50], at 10. As Dot Hill concedes, though, *Quanta* applies to downstream sales of products after an authorized, unrestricted first sale. *Quanta*, 553 U.S. at 626 (noting that it was the practice of restraining competition downstream from an authorized sale that motivated the rule of patent exhaustion). For instance, a patent holder cannot pursue a licensee's customers for infringement when it authorized the first sale of the patented product without restriction. This case, however, involves an upstream

---

[2]Dot Hill does cite a case stating "a party's 'attempt to collect royalties from two parties for the same product violates the exhaustion doctrine, and impermissibly extends the scope of the patent grants.'" Def.'s Combined Reply [#79], at 10 (quoting *PSC Inc. v. Symbol Techs., Inc.*, 26 F. Supp. 2d 505, 509 (W.D.N.Y. 1998)). Without addressing the merits of this contention, the Court finds the case inapplicable for two primary reasons. First, the patent owner in *Symbol* was impermissibly attempting to collect a royalty from a *downstream* customer. *Symbol*, 26 F. Supp. 2d at 507–08. As explained in the following paragraph, however, the instant case involves collection of a royalty from an *upstream* manufacturer in Dot Hill, and Dot Hill cites no case applying patent exhaustion to upstream manufacturers. Second, the *Symbol* court discussed the impropriety of collecting a double royalty in response to the licensee's assertion of the "patent misuse" affirmative defense. *Id.* at 509–11. Dot Hill has not asserted this defense.

manufacturer, and Dot Hill cites no case applying *Quanta* to an upstream manufacturer. In fact, other courts have rejected the argument. *See, e.g., Global Comms., Inc. v. DirecTV, Inc.*, No. 4:12CV651-RH/CAS, 2014 WL 805498, at *2 (N.D. Fla. Feb. 28, 2014) (finding *Quanta* and patent exhaustion inapplicable to upstream manufacturers); *Asetek Holdings, Inc. v. CoolIT Sys.*, No. C-12-4498 EMC, 2013 WL 5640905, at *2 (N.D. Cal. Oct. 11, 2013) ("No court that this Court is aware of has ever applied the patent exhaustion doctrine to protect anyone 'upstream'—*e.g.*, the person/entity's suppliers—nor has [defendant] identified any such authorities."). This Court agrees and does not find patent exhaustion applicable to the facts of this case.

Third, Dot Hill contends the release in § 3.1 of the HP License applies to Dot Hill. Def.'s Mot. Partial Summ. J. [#50], at 9. Section 3.1 provides in its entirety:

> **3.1 Crossroads' Release of HP and 3PAR.** Subject to the terms and conditions of this Agreement, Crossroads . . . releases and forever discharges *HPCO, 3PAR, and each of their Subsidiaries, directors, officers, employees, attorneys, consultants, and customers* from any and all claims, damages, and/or liability based on (a) claims asserted in the Lawsuit, and (b) infringement of any Crossroads Patent based on the manufacture, use, sale, offer to sell, lease, import, export, or other form of transfer of any HP Licensed Product occurring on or prior to the effective date.

HP License, § 3.1 (emphasis added). The release explicitly applies only to HP, 3PAR, their subsidiaries, directors, officers, employees, attorneys, consultants, and customers. There is no mention of manufacturers like Dot Hill. Nevertheless, Dot Hill boldly claims, based on this provision, it not only has no obligation to pay royalties under the Dot Hill License since the 2011 effective date of the HP License, but it also "is not liable for infringement or breach of contract for the non-payment of royalties on products it make for, and sold to, HP *prior* to the effective date of the HP License in 2011." Def.'s Mot. Partial Summ. J. [#50],

at 9 (emphasis added). Clearly, § 3.1 does not apply to Dot Hill, and the Court rejects the argument.

Fourth, Dot Hill directs the Court to extrinsic evidence. In particular, Dot Hill provides an affidavit from HP's Vice President and Associate General Counsel who was involved in negotiating the HP License, which describes her understanding of HP's intentions and the relative significance of § 8.7.1. *See* Def.'s Mot. Partial Summ. J. [#50], at 8; Def.'s Combined Reply [#79], at 4. As both parties represent, however, the HP License is unambiguous, making resort to extrinsic evidence inappropriate. The contract speaks for itself, and HP negotiated a lump sump payment for, among other things, "have made" rights. There is no language specifically referencing Dot Hill, the Dot Hill License, or Dot Hill's preexisting royalty obligations under the Dot Hill License regardless of whatever HP's corporate representative now claims HP's intentions were.

Therefore, the Court concludes Crossroads is entitled to summary judgment on Dot Hill's defenses of license and waiver as they relate to the breach of contract claims.

## Conclusion

The parties' cross motions for partial summary judgment boil down to the interaction of two license agreements: (1) the Dot Hill License between Crossroads and Dot Hill from 2006; and (2) the HP License between Crossroads and HP from 2011. Because Dot Hill manufactured products for HP via HP's "have made" rights from the HP License, Dot Hill is not subject to patent infringement claims concerning these products made for HP using the '035 patent. As such, the Court GRANTS Dot Hill's motion for partial summary judgment with respect to these claims and DENIES Crossroads' motion for partial summary judgment on the defenses of license and waiver as they pertain to these claims.

While the HP License shields Dot Hill from the infringement claims, the HP License says nothing about Dot Hill's preexisting obligation to pay Crossroads a royalty for products it sells using the '035 patent. As such, the Court GRANTS Crossroads' motion for partial summary judgment on the defenses of license and waiver as they relate to the breach of contract claims and DENIES Dot Hill's motion for partial summary judgment concerning these claims.

Accordingly,

IT IS ORDERED that Defendant Dot Hill System Corp.'s Motion for Partial Summary Judgment [#50] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FINALLY ORDERED that Plaintiff Crossroads Systems, Inc.'s Cross Motion for Partial Summary Judgment [#67] is GRANTED IN PART and DENIED IN PART, as described in this opinion.

SIGNED this the 19th day of September 2014.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE